## Case No. 129.

### The ALASKA.

[3 Ben. 391.][1]

District Court, E. D. New York. Sept., 1869.

PILOTAGE—JURISDICTION—TENDER.

1. Where a pilot boarded a ship, some thirty miles from Barnegat, and the master of the ship proposed that his employment should not commence till the vessel reached pilot ground, whereupon the pilot went to bed, and was called when Sandy Hook hove in sight, and then took charge of the vessel, and thereafter libelled her for the amount of offshore pilotage, awarded by the laws of the state of New York: *held*, that the court had jurisdiction of the action, [as it was on a maritime contract.]

2. That the libellant could only recover for inshore pilotage, and that, as the amount of inshore pilotage had been tendered before suit, the decree must be without costs. ·

[3. Cited in Ex parte Easton, 95 U. S. 76, as authority for holding a contract for wharfage to be a maritime contract.]

In admiralty. This was an action to enforce an alleged lien upon an alleged American bark called the "Alaska," for pilotage. The libellant, who was a New Jersey pilot, boarded the bark when some thirty miles south southeast from Barnegat, bound to New York. He did not, however, take charge until Sandy Hook light was just in sight, from which place he acted as pilot until the vessel was moored in the port of New York, which was her home port. For this service he presented a bill for off-shore pilotage. The owners of the vessel refused to pay off-shore pilotage, but, before suit, tendered the regular in-shore pilotage, which was refused, whereupon this action was brought. [Decree by libellant for amount of in-shore pilotage.]

Emerson, Goodrich & Wheeler, for libellant.

F. A. Wilcox, for claimant.

## Case No. 130.

### The ALASKA.

[7 Ben. 183.][1]

District Court, S. D. New York. March, 1874.

COLLISION IN LONG ISLAND SOUND — SCHOONERS CROSSING—12TH (NOW 17TH) RULE.

1. Two schooners, the A. and the H., were beating through Long Island sound, bound to New York, the wind being about west by south. Both vessels were on the port tack, standing off from the Long Island shore, the A. being ahead, and to windward of the H. The H., however, being the faster vessel, passed the A., and came about on the starboard tack, for the purpose, as she said, of avoiding the strength of the ebb tide, and obtaining a more favorable wind nearer the Long Island shore. Shortly after she came on the starboard tack, she was run into by the A., which struck her on the port quarter. She alleged that she had room enough to get by the A., but that the wind headed her off, and favored the A., and that the A. was bound to have kept out of her way, but made no effort to do so. The A. claimed that the H. came on her starboard tack so close to the A. that it was not possible for the A. to go under her stern, although her helm was at once put hard a-port: *Held*, That, if the case were one calling for the application of the 12th rule [now rule 17] for avoiding collisions, the

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1][Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

burden of proof would be on the A. to show an excuse for not keeping out of the way of the H.;

[See Bartlett v. Williams, Case No. 1,081.]

2. But that, on the facts, the H. was in fault, in coming on her starboard tack so close to the A. as to compel the A. to change her course so as to avoid the H. Her manoeuvre was a hazardous one;

3. That, on the facts, the helm of the A. was ported as soon as the H. tacked, and that the A. was free from fault.

In admiralty.

R. H. Huntley, for libellants.

W. R. Beebe and A. J. Heath, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the schooner Marietta Hand against the schooner Alaska, to recover for the damages sustained by the libellants, in consequence of a collision which took place between the two vessels on the 26th of April, 1872, between 3 and 4 o'clock P. M., in fine and clear weather, in Long Island sound, a little to the westward of Plum Island, and not far from the Long Island shore. Both vessels were bound to New York through the sound, and both were beating, the wind being about west by south, and blowing a fresh breeze. Just before the collision, both vessels were on the port tack, standing off from Long Island shore. At the commencement of the standing of both vessels on such port tack, the Alaska was ahead, and to the windward of the Hand. While they both continued to stand on such tack, the Hand, being in ballast and light, forereached and passed the Alaska, the Alaska being still to the windward. The Hand then tacked and came on to the starboard tack, the Alaska still keeping on the port tack. In this condition of things the collision occurred, the Alaska, head on, striking the port quarter of the Hand a glancing blow near the stern of the Hand.

The libel alleges, that the Hand stood on the port tack until she had beaten it out; that then, owing to the strength of the ebb tide in the middle of the sound, and to the fact that she could obtain a more favorable wind nearer the shore of Long Island, she tacked, to stand toward Long Island; that, when she so tacked, the Alaska was 600 or 700 feet astern of her, and bore about one point off her weather quarter; that, as the Hand went about, the wind headed her off on the starboard tack, and thereby favored the Alaska, so as to enable her to luff nearer to the position into which the tack just made brought the Hand; that, upon discovering this, those on board of the Hand hailed the Alaska to keep off, but she kept on and ran into the Hand; that the collision was caused solely by the negligence of the Alaska, in not keeping away, in not having a lookout properly stationed, and in having a load of lumber piled so high on her deck, that those on board of

her could not see the Hand; and that, if the Alaska had slightly changed her wheel, she would have passed to the leeward of the Hand, and thus have avoided a collision. This libel was sworn to by the libellant Hawkins, one of the owners of the Hand, six days after the collision, and was drawn up on a statement made by Hawkins, and by Hallock, the master of the Hand, who was examined on the trial as a witness for the libellants.

The answer avers that, on the port tack of both vessels, the Hand ranged a little ahead of the Alaska, and when about once or twice her length ahead, and about three points off the starboard and lee bow of the Alaska, the Hand suddenly, and without any warning, and when the two vessels were in too near proximity, tacked, apparently attempting to run across the bows of the Alaska, and ran into the Alaska; that everything that could be done on board of the Alaska was done to avoid the collision, but it was inevitable from the instant of the last unseamanlike manoeuvre of the Hand, though the helm of the Alaska was put and kept hard a-port; and that the collision was wholly the fault of the Hand.

The contention on the part of the Hand is, that the courses of the two vessels were crossing, and they had the wind on different sides, and it was the duty of the Alaska, under article 12, as having the wind on the port side to keep out of the way of the Hand, both vessels being close hauled. If the state of things contemplated in article 12 existed, the burden of proof is on the Alaska to show an excuse for not keeping out of the way of the Hand, as the existence of such a state of things, there having been a collision between the two vessels, is prima facie evidence of fault in the Alaska, and conclusive evidence of fault in her, unless successfully rebutted by her. It becomes necessary, therefore, to determine whether article 12 applies to the case. The Alaska contends, that it does not apply, for the reason that the Hand, when on the port tack with the Alaska, and when to the leeward of the Alaska, and when only about once or twice the length of the Hand ahead of the Alaska, and about three points off the starboard and lee bow of the Alaska, suddenly, and without any warning, and when the two vessels were in too near proximity, tacked and attempted to run across the bows of the Alaska, and caused the collision, although the Alaska, from the instant of the Hand's manoeuvre, put and kept her helm hard a-port. With the wind about west by south, the Alaska, on her port tack, close hauled and lying say five points to the wind, would be heading about northwest, and the Hand, on her starboard tack, close hauled, and lying say five points to the wind, would be heading about south southwest. These courses were crossing.

The libel states, that, when the Hand

tacked, the Alaska was 600 or 700 feet astern of the Hand, and bore about one point off the weather quarter of the Hand; and that, as the Hand went about, the wind headed her off on the starboard tack (that is, caused her to head more to the southward than south southwest, as I understand it, so as to diminish her opportunity of crossing ahead of the Alaska), and favored the Alaska, so as to enable her to luff nearer to the position into which the tack just made brought the Hand (that is, so as to enable the Alaska to head more to the westward than northwest). This story of the Hand, told six days after the collision, is a very different one from that told by Hallock, the master of the Hand, at the trial, 20 months after the collision. Hallock was on the deck of the Hand, and at her wheel, and testifies, at the trial, that, when the Hand tacked the last time before the collision, she was from a half to three quarters of a mile ahead of the Alaska, which would be from 2,640 to 3,960 feet ahead, instead of 600 or 700 feet ahead. He also testifies that, after getting on the starboard tack, he stood on it from 10 to 15 minutes before the collision. There is nothing of this in the libel. He also testifies, that he was nearly half a mile to the leeward of the Alaska, when he so tacked; and that he supposed he was far enough ahead to cross the bows of the Alaska. It is impossible, I think, from all the evidence in the case, to resist the conclusion, that the Hand, being light, was not only trying to outsail the Alaska, and did outsail her, but also then undertook to wind her and cross her bows, and to do that in such close proximity to the Alaska, as to compel the Alaska, under the rule of navigation, to depart from her course so as to avoid the Hand. If, as is alleged in the libel, the ebb tide was stronger in the middle of the sound, and the Hand could obtain a more favorable wind nearer the Long Island shore, and these were the reasons why she tacked when and where she did, there is nothing to show that these reasons were not and ought not to have been as controlling before she passed the Alaska as afterwards, and nothing to show why the Hand did not tack at a point where she would have been certain to go under the stern of the Alaska, and where she would not have attempted to cross the the bows of the Alaska. The admission by the master of the Hand, that he supposed, when he tacked, that he was far enough ahead to cross the bows of the Alaska, is a confession that he intended to cross her bows. This was a hazardous manoeuvre in a vessel sailing close hauled, and liable to be headed off both by the wind and the tide, and to make leeway enough to disappoint the expectation of crossing the bows of the Alaska. Nevertheless, if the Hand, in fact, tacked far enough off from the Alaska, to make the 12th article applicable, it must be applied, although the Hand, in

tacking when and where she did, did so for the avowed purpose of winding the Alaska. That the wind was likely to head the Hand off, when she got on the starboard tack, was a circumstance which ought to have entered into the calculation of the master of the Hand, before he put his helm down to go about, and there can be no justification for him, if he went about when the Alaska was only 600 or 700 feet astern of the Hand, and then tried to cross the bows of the Alaska. This view, by the time of the trial, came to be controlling, and the witnesses from the Hand depart from the statement of the libel, and place the Alaska, at the time the Hand went about, at a much greater distance astern of the Hand than 600 or 700 feet. Burke, the acting mate of the Hand, who was walking the deck, puts the Alaska at the distance of about half a mile astern of the Hand when the Hand tacked, and says, that when the Hand got filled away the Alaska was about half a mile off in a straight line, and about four points off the lee bow of the Hand, and that, at the time the Hand tacked, they calculated to go ahead of the Alaska. This witness makes ten feet in a rod, and fifty rods in an eighth of a mile.

The libel charges, as reasons why the Alaska did not keep away, her want of a lookout, interception of vision by her deck load of lumber, and failure to port.

Ambrose Strout, the master of the Alaska, who was on her deck, the mate having the wheel, says that the Hand was about twice to three times her length ahead of the Alaska, when she tacked; that the Hand had just got fairly filled away when the vessels struck; that, when they saw the Hand tacking, the Alaska's wheel was hove hard up, and her main sheet was run off; that Ferrin W. Strout was stationed as a lookout on the forecastle, forward; and that the lookout noticed that the Hand was tacking, and he, the master, saw her himself at the same time, and saw her when she was coming up into the wind. Ferrin W. Strout, the lookout, testifies, that he was on the lookout; that the Hand ranged about twice her length ahead of the Alaska, and then tacked; that she had barely filled away before the collision; that he was standing on the forecastle deck, when the Hand tacked; and that, when he saw her tack, he halloed to the man at the wheel of the Alaska, and then the wheel of the Alaska was hove up and her main sheet was run off, and she paid off a little, but there was not time to pay off more before the vessels struck. Stover, a hand on the deck of the Alaska, and who saw the collision, testifies, that the lookout on the Alaska sang out to the man at her wheel to port his wheel, that the Hand was tacking under their bow. Uriah W. Strout, the mate of the Alaska, who was at her wheel, testifies, that the Hand ranged ahead, and when she got a lit-

tle on the starboard bow of the Alaska, a mite ahead, if anything, tacked; that they saw her when she tacked, and they went to keep off, and hove their helm hard up, and fell off a very little before the collision; and that the collision could not have been avoided after the Hand went in stays, because, when she tacked, she was so near to the Alaska, being about half a point on the lee bow of the Alaska, and about twice her length ahead.

On the whole evidence, I am of opinion, that the libellants have failed to make out their case against the Alaska, and that she has excused her not avoiding the Hand, by showing that the Hand improperly tacked so closely under the bows of the Alaska as to make it impossible for the Alaska to avoid her by the exercise of reasonable diligence and skill. The Alaska had no reason to suppose that the Hand had beaten out her port tack, or would go about, and there seems to have been no reason for her going about, except a desire to wind the Alaska. The libel must be dismissed, with costs.